UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

SECURITIES AND EXCHANGE COMMISSION, )
)
PLAINTIFF, )
)
v. ) Civil Action No.
)
SHERWIN P. BROWN, ) 06-1213 PAM/JSM
JAMERICA FINANCIAL, INC., and )
BRAWTA VENTURES, LLC )
)
DEFENDANTS. )
)
_____ )

# COMPLAINT

Plaintiff United States Securities and Exchange Commission (the "Commission") alleges as follows:

## NATURE OF THE COMPLAINT

1. This matter involves a fraudulent scheme by an investment adviser and its owner to misappropriate client funds invested in a purported "mutual fund." Sherwin P. Brown ("Brown") is the majority owner and President of Jamerica Financial, Inc., also known as Jamerica, Inc. ("Jamerica"), a Minneapolis, Minnesota-based investment adviser registered with the Commission. Brown is also manager of Brawta Ventures, LLC ("Brawta"), a purported private investment fund formed by Brown and Jamerica. Brown, Jamerica and Brawta raised at least $1.65 million from 53 investors, a number of whom are retired or near retirement, and defrauded the investors of Brawta by misappropriating approximately $569,950

SCANNED
MAR 29 2006
U.S. DISTRICT COURT MPLS

of investor principal, and using the diverted proceeds to pay for Brown's personal expenses and Jamerica's business expenses.

2. Accordingly, the defendants, directly and indirectly, engaged and, unless enjoined, will continue to engage in transactions, acts, practices and courses of business which violate Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §77(q)(a)], Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. §§78j(b)] and Rule 10b-5 [17 C.F.R. §§240.10b-5 ] promulgated thereunder, and Sections 206 and 204 of the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-4] and Rule 204-2 [17 C.F.R. § 275.204-2] thereunder.

3. The Commission brings this action pursuant to Section 20(b) of the Securities Act [15 U.S.C. §77t(b)], Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§78u(d) and 78u(e)], and Section 209(d) of the Advisers Act [15 U.S.C. §§ 80b-9(d)]

## JURISDICTION

4. This Court has jurisdiction over this action pursuant to Section 22 of the Securities Act [15 U.S.C. § 77v], Section 27 of the Exchange Act [15 U.S.C. § 78aa], Section 214 of the Advisers Act [15 U.S.C. § 80b-14], and 28 U.S.C. § 1331.

## DEFENDANTS

5. Jamerica, is an investment adviser registered with the Commission since April 11, 2000, and is a Minnesota corporation with its principal place of

business in Minneapolis, Minnesota. Jamerica provides investment advisory services and portfolio management services to more than 250 clients in approximately 4 states.

6. Sherwin P. Brown, age 45, resides in St. Paul, Minnesota. Brown is the President and majority owner of Jamerica. As President of Jamerica, Brown controls Jamerica and provides investment advice and portfolio management services to the clients of Jamerica.

7. Brawta, a Minnesota limited liability company, was organized by Brown and Jamerica in May 2004. Brown is the General Manager of Brawta, and is solely responsible for selecting the fund's investments. Brawta purports to be a private investment fund which has raised approximately $1.65 million from more than 53 investors in at least four states.

## FACTS

### Background of Jamerica and the Fund

8. At all times relevant to this Complaint, Jamerica was registered with the Commission as an Investment Adviser pursuant to Section 203 of the Advisers Act.

9. At all times relevant to this Complaint, Brown was Jamerica's President and majority owner, and managed and completely controlled Jamerica.

10. For its investment advisory services, Jamerica charges a fee to its clients based on a percentage of assets under management. This fee is capped at a rate of 1.5%.

3

11. In May 2004, Brown and Jamerica formed a purportedly private investment fund, Brawta. Brown is the General Manager of Brawta, and represented to investors that he was solely responsible for selecting Brawta's investments and for overseeing its trading activity.

12. Between May 2004 and January 2006, Brown, Jamerica, and Brawta raised approximately $1.65 million from approximately 53 investors.

### Brown and Jamerica's Solicitation of Investment in Brawta

13. Beginning in December 2003, Brown and Jamerica provided written correspondence to the clients of Jamerica to market and solicit investment in Brawta.

14. In Jamerica's December 2003 newsletter, Brown and Jamerica stated their intention to form a "Jamerica Financial, Inc. Mutual Fund" which would "emphasize an investment of 50% of investment assets in China and Russia."

15. In an April 2004 email to Jamerica clients, Brown and Jamerica referred to the mutual fund discussed in the December 2003 newsletter, and stated that "we are now in the process of launching our own mutual fund." The email stated that the fund would operate "more as a Venture Capital Fund," which "will initially be open to a select limited amount of investors." The email stated that "[t]he emphasis of this fund will all be on biotechnology." There was no reference to investment in China or Russia in this email. Brown concluded this email with the statement that "I will be personally calling you to seek your support on this

venture which I feel in the long run will be very rewarding for all who are involved."

16.   During the relevant time period, Brown and Brawta maintained a website, www.brawta.com, which until approximately March 2006 stated that Brawta's investment approach was "focused on biotechnology and alternative energy."

17.   Beginning in or about 2004 and continuing throughout 2005, Brown solicited investment in Brawta during meetings with Jamerica clients.

18.   During these meetings, Brown provided inconsistent and incomplete information to various clients about the investment strategy of Brawta, the actual use of Brawta investment funds, the risk profile of the investments, and minimum time limitations on the investment in Brawta.

19.   Between August 2004 and through December 2005, Brown, Jamerica and Brawta provided periodic valuations for the shares of Brawta. Some of this information was maintained on Brawta's website and was also provided directly to clients through quarterly and annual statements from Jamerica and the third party custodian who maintained Jamerica clients' investment accounts. These valuations did not reflect any diversion of Brawta funds for Brown's personal expenses or the business expenses of Jamerica.

### Brown's and Jamerica's Misappropriation of Brawta Funds

20.   Instead of investing the funds of Brawta as promised, Brown and Jamerica diverted approximately $569,950 from Brawta and deposited such funds

into the personal checking account of Brown and the checking account of Jamerica. From there, Brown and Jamerica used the Brawta funds for personal expenses of Brown and business operating expenses of Jamerica.

21. Between May 2004 and January 2006, at least $1.65 million of Brawta investor principal was deposited into the checking account of Brawta.

22. Between approximately June 4, 2004 and August 17, 2004, Brown diverted approximately $145,400 from the Brawta checking account into his personal checking account. Brown used approximately $96,600 of the Brawta funds towards payments on a home equity line of credit.

23. Between approximately November 14, 2004 through January 30, 2006, Brown and Jamerica diverted at least $424,550 from the Brawta checking account into the checking account of Jamerica. Brown and Jamerica used these funds for personal expenses of Brown and for business operating expenses of Jamerica.

24. Between August 2004 and December 2005, Brown used funds from the Jamerica account to pay for, among other things, the following personal expenses:

|   | Amount | Expense |
|---|---|---|
| 1. | $69,775.87 | Mortgage Payment |
| 2. | $24,608.42 | ATM Withdrawal |
| 3. | $3,100.00 | Personal Checking Account Deposit |
| 4. | $2,114.16 | Apple Store |
| 5. | $1,584.00 | Lawn Care Service |
| 6. | $1,486.50 | Polo/Ralph Lauren |
| 7. | $1,452.97 | Target |

6

| 8. | $1,365.33 | Coach |
| 9. | $1,192.80 | Marshall Field |
| 10. | $1,065.37 | Circuit City |

25. Thousands of dollars of other personal expenses were paid for using funds in Jamerica, including payments to: the Apple Store; a lawn care service; Polo/Ralph Lauren; Coach; Circuit City; Helzberg Diamonds; Netflix; and Victoria's Secret.

### Brown Lied to Investors about the Actual Use of Brawta Funds

26. Brown's clients were led to believe that the only compensation he would receive for managing Brawta would come from the general billing to Jamerica clients for assets under management. Brown did not tell clients that he would charge any special fee for managing Brawta.

27. Neither Brown nor Jamerica told investors that money invested in Brawta would be used towards personal expenses of Brown or the business operating expenses of Jamerica.

28. Neither Brown nor Jamerica told investors that he or Jamerica would borrow money invested in Brawta.

29. In addition, Brown and Jamerica attempted to conceal the misappropriation of Brawta funds into the bank account of Jamerica. Brown and Jamerica falsified the 2004 general ledger of Jamerica by claiming that money deposited into the Jamerica bank account was the capital contributions of Brown when in fact it was Brawta investor money diverted from Brawta's bank account.

## Brown's and Jamerica's Failure to Produce Documents to the Commission's Exam Staff and Falsified General Ledger

30.  On February 21, 2006, examination staff from the Commission's Midwest Regional Office ("MRO") informed Brown and Jamerica that the MRO would conduct an examination of Jamerica.

31.  From February 27, 2006 through March 3, 2006, examination staff from the MRO conducted its examination of Jamerica at its office in Minneapolis, Minnesota.

32.  At all times relevant to this Complaint, Brown and Jamerica were required – pursuant to Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-2 thereunder [17 CFR § 275.204-2] -- to (a) make and keep true and accurate copies of various categories of books and records, (b) provide such records to the Commission upon reasonable request, and (c) make such records available to examination by Commission representatives.

33.  Prior to their arrival at Jamerica's office, examination staff provided Brown and Jamerica a list of books and records that the staff wished to review during the examination. Among other documents, the staff requested to review documents related to client information, the financial books and records of Jamerica, and forms the Commission requires Jamerica to maintain.

34.  Also prior to their arrival, the examination staff requested to review the private offering memorandum of Brawta. Brown told the examination staff

that there were no offering documents for Brawta, and he was unable to tell the staff the number of investors in Brawta.

35. Also prior to their arrival, Brown stated to the examination staff that no fees for the management of Brawta were taken directly from Brawta. Brown further stated to the examination staff that all Brawta investors are also clients of Jamerica, and that all fees for managing Brawta were collected as part of the fee Jamerica charged clients based on a percentage of the clients' assets under management.

36. Prior to their arrival, Brown provided the examination staff with a copy of Jamerica's Form ADV Part II, which Jamerica was required to maintain. This form indicated that it was last updated on March 15, 2004.

37. During the examination of Jamerica, the staff requested the financial books and records for Brawta from Brown and Jamerica. In response to this request, the examination staff was provided with only incomplete bank statements and cancelled checks through January 2006, and miscellaneous records relating to certain investments of Brawta.

38. During the examination of Jamerica, the staff also requested a complete list of Brawta investments and documentation as to how the value of shares of Brawta was determined. Brown and Jamerica were unable to produce any such documentation.

9

39. During the examination of Jamerica, the staff was provided with the 2003 and 2004 general ledgers from Jamerica. The general ledger and related financial books and records for 2005 had not been prepared.

40. As previously discussed, Brown and Jamerica Brown and Jamerica provided falsified financial records to the examination staff. The 2004 general ledger of Jamerica falsely claimed that money deposited into the Jamerica bank account was capital contributions of Brown when in fact it was Brawta investor money diverted from Brawta's bank account.

## COUNT I

### Violations of Section 17(a)(1) of the Securities Act
### (Against All Defendants)

41. Paragraphs 1 through 42 are realleged and incorporated by reference as though fully set forth herein.

42. By engaging in the conduct described above, Brown, Jamerica and Brawta, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have employed devices, schemes and artifices to defraud.

43. Brown, Jamerica and Brawta intentionally or recklessly made the untrue statements and omissions and engaged in the devices, schemes, artifices, transactions, acts, practices and courses of business described above.

44. By reason of the foregoing, Brown, Jamerica and Brawta violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### Violations of Sections 17(a)(2) and (3) of the Securities Act
### (Against All Defendants)

45. Paragraphs 1 through 42 are realleged and incorporated by reference as though fully set forth herein.

46. By engaging in the conduct described above, Brown, Jamerica and Brawta, in the offer and sale of securities, by the use of the means and instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, have:

   a. obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

   b. engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

47. Brown, Jamerica and Brawta made the untrue statements and omissions of material fact and engaged in the devices, schemes, artifices, transactions, acts, practices and courses of business described above.

48. By reason of the foregoing, Brown, Jamerica and Brawta have violated Sections 17(a)(2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(2)-(3)].

## COUNT III

### Violations of Section 10(b) of the Exchange Act, and Exchange Act Rule 10b-5
### (Against All Defendants)

49. Paragraphs 1 through 42 are realleged and incorporated by reference.

50. As more fully described in paragraphs 1 through 42 above, Brown, Jamerica and Brawta, in connection with the purchase and sale of securities, by the use of the means and instrumentalities of interstate commerce and by the use of the mails, directly and indirectly: used and employed devices, schemes and artifices to defraud; made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated or would have operated as a fraud and deceit upon purchasers and sellers and prospective purchasers and sellers of securities.

51. Brown, Jamerica and Brawta knew, or were reckless in not knowing, of the facts and circumstances described in paragraphs 1 through 42 above.

52. By reason of the foregoing, Brown, Jamerica and Brawta violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. 240.10b-5].

## COUNT IV

### Violations of Advisers Act Sections 206(1) and 206(2)
### (Against Defendants Brown and Jamerica)

53. Paragraphs 1 through 42 are realleged and incorporated by reference.

54. At all times relevant to this Complaint, Brown and Jamerica acted as investment advisers to the Fund and its investors.

55. As more fully described in paragraphs 1 through 42 above, at all times alleged in this Complaint, Brown and Jamerica, while acting as investment advisers, by use of the mails, and the means and instrumentalities of interstate commerce, directly or indirectly, knowingly, willfully or recklessly: (i) employed devices, schemes or artifices to defraud its clients or prospective clients; and (ii) engaged in transactions, practices and courses of business which have operated as a fraud or deceit upon its clients or prospective clients.

56. By reason of the foregoing, Brown and Jamerica have violated Sections 206(1) and 206(2) of the Advisers Act. [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## COUNT V

### Violation of Section 204 of the Advisers Act, and
### Advisers Act Rule 204-2
### (Against Jamerica)

57. Paragraphs 1 through 42 are realleged and incorporated by reference.

58. As described in more detail in paragraphs 1 through 42 above, Jamerica (a) failed to make and keep true and accurate and current copies of

records that Jamerica is required to keep by Commission rule (including, but not limited to, the general ledger and financial statements of Jamerica relating to its business as an investment adviser) as required by Section 204 of the Advisers Act; and (b) falsified copies of its records, and provided those falsified documents to the Commission's exam staff.

59. By reason of the foregoing, Jamerica violated Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-2 thereunder [17 C.F.R. § 275.204-2].

## COUNT VI

### Aiding and Abetting Jamerica's Violations of Advisers Act Section 204 and Rule 204-2 Thereunder
### (Against Brown)

60. Paragraphs 1 through 42 are realleged and incorporated by reference.

61. As set forth more fully above in paragraphs 1 through 42, Jamerica violated Section 204 of the Advisers Act and Rule 204-2 thereunder, by failing to keep required records, falsifying copies of its records, and providing those falsified documents to the Commission's exam staff.

62. By engaging in the conduct described in paragraphs 1 through 42, Brown knowingly and aided and abetted Jamerica's violations of Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-2 thereunder [17 C.F.R. § 275.204-2].

## RELIEF REQUESTED

**WHEREFORE,** the Commission respectfully requests that this Court:

### I.

Find that Defendants Brown, Jamerica and Brawta committed the violations charged and alleged herein.

### II.

Grant Orders of Preliminary and Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendants Brown, Jamerica and Brawta, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j] and Rule 10b-5 [17 CFR § 240.10b-5] thereunder.

### III.

Grant Orders of Preliminary and Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendants Brown and Jamerica, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the Order, by personal service or otherwise, and

each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, in violation of Sections 206(1), and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)];

### IV.

Grant Orders of Preliminary and Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Defendants Brown and Jamerica their officers, agents, servants, employees, attorneys and those persons in active concert or participation with them who receive actual notice of the Order, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices or courses of business described above, or in conduct of similar purport and object, violating or aiding and abetting any violations of Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and Rule 204-2 thereunder [17 CFR § 275.204-2];

### V.

Issue an Order requiring Defendants Brown, Jamerica and Brawta to disgorge the ill-gotten gains that they received as a result of their wrongful conduct, including prejudgment interest.

## VI.

With regard to the Defendants Brown and Jamerica's violative acts, practices and courses of business set forth herein, issue an Order imposing upon Brown and Jamerica appropriate civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## VII.

Retain jurisdiction of this action in accordance with the principals of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## VIII.

Grant appropriate emergency relief to prevent further secretion or dissipation of assets purchased with investor funds.

## IX.

Grant an Order for any other relief this Court deems appropriate.

Respectfully submitted,

*(signature)*

Charles J. Kerstetter
Erik J. Lillya
John J. Kaleba
Attorneys for the Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 West Jackson Blvd., Suite 900
Chicago, IL 60604
Telephone: (312) 353-7390
Facsimile: (312) 353-7398

Dated: March 28, 2006