UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Unites States Securities and Exchange Commission, | Civil No. 06-1213(JRT/FLN) |
| Plaintiff, | |
| v. | **ORDER AND REPORT AND RECOMMENDATION** |
| Sherwin P. Brown, Jamerica Financial, Inc. and Brawta Ventures, LLC, | |
| Defendants. | |

John J. Kaleba, Robert M. Moye for Plaintiff.
Matthew D. Forsgren for Defendant.

___

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 17, 2007, upon the Court's order that Defendant appear and show cause why he should not be held in contempt of court for violating the terms of the preliminary injunction. The Court's order was in response to Plaintiff's Motion for a Rule to Show Cause [#203]. The Court also addresses Defendants' Emergency Motion to Modify Agreed Order of Preliminary Injunction and Asset Freeze [#197], a motion which was stayed pending the outcome of the order to show cause hearing. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court orders that Defendant's motion [#197] be granted in part and denied in part and recommends that Defendants be held in contempt. and ordered to make their books and records available to the SEC for inspection.

**I.      FINDINGS OF FACT**

  **1. The Preliminary Injunctions in this case.**

Judge Magnuson of the District of Minnesota issued an Agreed Order of Preliminary

Injunction and Asset Freeze [#16] in this matter on April 14, 2006. Judge Tunheim, also of the District of Minnesota, issued an Amended Agreed Order of Preliminary Injunction and Asset Freeze [#164] in this matter on July 11, 2007. Both Injunctions limited the use of Defendants' Wells Fargo Account XXXXXX2489 in the following ways: (1) use of the account was limited exclusively to business operating expenses; (2) Defendants were required to obtain court approval before depositing funds into the account; (3) the Defendants were required to provide written notice to Plaintiff before making a withdrawal; and (4) the Defendants were required to provide daily, written reports of account activity. (*See* Agreed Order at 7; Agreed Amended Order at 7-8.)

The Amended Agreed Order of Preliminary Injunction and Asset Freeze also preserved Jamerica's relationship with Fiserv which managed Jamerica accounts and deducted investment management fees from those accounts for Jamerica twice each year, in March and September. (Agreed Amended Order at 8; Pl. Br. at 3.)

    **2. Jamerica's new bank account.**

Jamerica's account XXXXXX2489 was closed on August 31, 2007 because it had been overdrawn for more than 60 days. (*See* Ex. 2 to Pl. Mem. in Support of its Motion for a Rule to Show Cause, Dkt. #204.) On October 3, 2007, the Defendants informed the Plaintiff that Sherwin Brown had opened a new account, Affinity Plus Credit Union Act. XXXXXX3470 and provided a bank statement of account activity between September 12, 2007 and October 1, 2007. (Dkt. #204 at Ex. 5.)

    **3. Failure to provide reports of deposits into and expenses paid from Jamerica's bank account.**

The Defendants deposited checks from clients (for investment management fees) into Jamerica's new operating account in September 2007 without first obtaining court approval. On

September 17, 2007, the Defendants reported to the SEC 18 separate bills that were due in the month of September.  (Pl. Br. at Ex. 6.)  In September and early October, the Defendants wrote the following checks from the new operating account which did not clearly correspond to one of the 18 bills enumerated in Defendants' September 17, 2007 letter:  (1) a check written for $10,962.63 on September 18, 2007; (2) a check written for $6,000 on September 20, 2007; (3) a check written for $5,461.29 on September 17, 2007; (4) a Capital One telephone transfer of $1,269 dated September 28, 2007; and (5) a Credit One Bank payment of $739.34 made on October 1, 2007.  (Pl. Br. at Ex. 5 and 6.)

The Affinity Plus account statement from September also showed a number of unexplained cash withdrawals between September 14, 2007 and October 1, 2007: (1) a series of checks totaling $3,820.83, which were presented and cashed (not deposited) on September 20, 2007; (2) a cash withdrawal of $500 on September 13, 2007; (3) two transfer payments to Capital One, totaling $2,819 on September 14, 2007 and September 28, 2007.  (Pl. Br. at Ex. 5.)

**4. Failure to provide daily reports of Wells Fargo account balance.**

The Defendants do not dispute that they failed to provide to Plaintiffs consistent daily reports of bank account activity.  From April until late July of 2007 and August until September 25, 2007, Defendants did not provide daily reports of the Wells Fargo account's activity.  (Pl. Br. at 4.)

**5. Transfer of Investor Accounts from Fiserv to Charles Schwab.**

The Defendant helped his clients transfer their Jamerica investor accounts from Fiserv to Charles Schwab without first notifying the Plaintiffs.

**6. Testimony of Sherwin Brown.**

Mr. Brown testified that Jamerica has two other employees in addition to himself.  According

to Brown, Jamerica has 105 clients, who have over 300 accounts managed by Jamerica.

Defendant Brown testified that he moved his clients' investment accounts from Fiserv to Schwab because Fiserv terminated the relationship between Fiserv and Jamerica. He testified that Fiserv told him that Jamerica no longer met Fiserv's client criteria. He testified that 90% of his clients themselves moved their accounts to Schwab upon Brown's suggestion to do so. He stated that in order to move their accounts, each client had to sign five documents. He testified that the SEC and the Receiver were on notice that Fiserv had terminated Jamerica as a client before Mr. Brown recommended to his clients to move their accounts to Schwab. Unlike Fiserv, Schwab did not remove management fees bi-annually on behalf of Jamerica; rather, Jamerica's clients were required to pay the management fees directly to Jamerica.

Mr. Brown testified that the check he wrote on September 17, 2007 for $5,461.29 was an employee paycheck. He stated that the check written of September 18, 2007 for $10,962.63 was also an employee paycheck. The check in the amount of $6,000 written on September 20, 2007 was for office space rent. A $1,269 transaction on September 28, 2007 was a Capital One telephone transfer. He testified that an October 1, 2007 payment of $739.34 was a Credit One Bank payment.

Mr. Brown testified that he was unable to send the SEC the daily report of his bank account balance because his fax machine, phone and internet were not working.

Mr. Brown testified that the checks he cashed on September 20, 2008 were written to himself and he used the money to reimburse his wife for her payment of Jamerica's business expenses. He testified that he also borrowed money on a credit card.

## II.  LEGAL ANALYSIS

"Civil contempt may be employed either to coerce the defendant into compliance with a

court order or to compensate the complainant for losses sustained, or both." *Chicago Truck Drivers v. Bhd. Labor Leasing*, 207 F.3d 500, 505 (8th Cir. 2000). The party seeking a contempt order must prove by clear and convincing evidence that the individual allegedly in contempt violated the order. *Jake's Ltd. v. City of Coates*, 356 F.3d 896, 899-900 (8th Cir. 2004)**.** In making a finding of civil contempt, a court need not find that a party's violation was willful or intentional. *McComb*, 336 U.S. at 191.

Once the moving party establishes that the other party violated the court's order, the burden shifts to the violating party to show an inability to comply. *Chicago Truck Drivers*, 207 F.3d at 505 (*citing U.S. v. Rylander*, 460 U.S. 752, 757 (1983)).

The court's discretion in fashioning an appropriate remedy for contempt includes the power to "grant the relief that is necessary to effect compliance with its decree. The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *Hartman v. Lyng*, 884 F.2d 1103, 1106 (8th Cir. 1989) (quoting *McComb v. Jacksonville Paper Company,* 336 U.S. 187, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949)).

The Court finds the Defendants in contempt of Court for failing to inform the SEC that Jamerica's client accounts were being moved from Fiserv to Schwab. The Court also finds the Defendants in contempt for failing to provide a daily report to the SEC of bank account activity. The Court does not find the Defendants in contempt for failing to accurately report 5 of 18 checks written in September 2007 for business expenses.

### III.   **ORDER AND RECOMMENDATION**.

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that

Defendants' Emergency Motion to Modify Agreed Order of Preliminary Injunction and Asset Freeze [#197] is **GRANTED in part** and **DENIED in part**, as follows:

1. To the extent that the Defendants seek to modify the preliminary injunction to reflect Jamerica's new bank account number, the motion is **GRANTED**.

2. To the extent that Defendants seek to modify the preliminary injunction to reflect that the customer accounts managed by Jamerica have been moved from Fiserv Trust Company to Charles Schwab, the motion is **GRANTED**.

3. To the extent that Defendants seek to modify the Preliminary Injunction to require Defendants to provide the SEC with weekly, rather than daily, account activity reports, the motion is **DENIED**.

4. To the extent that Defendant Brown seeks permission to take a bi-weekly salary of $4,923 to pay his reasonable and necessary living expenses, the motion is **DENIED**.

5. To the extent that Defendants seek permission to pay Jamerica employees on a bi-weekly basis, the motion is **GRANTED**.

6. To the extent that Defendants seek to modify the injunction to reflect that the Defendants' Scottrade account has been closed, the motion is **DENIED**.

7. To the extent that Defendants seek to modify the Preliminary Injunction to reflect a Receiver has been appointed, the motion is **GRANTED**.

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants be held in contempt of court and, as a result, make all of their books and records available to the SEC for inspection.

DATED: February 12, 2008                    s/ *Franklin L. Noel*
                                            FRANKLIN L. NOEL
                                            United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 3, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words.

A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **March 3, 2008,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.