UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States Securities and                                    Civil No. 06-1213 (JRT/FLN)
Exchange Commission,

        Plaintiff,

        v.                                                      **REPORT AND
                                                                RECOMMENDATION**

Sherwin P. Brown, Jamerica
Financial, Inc., and Brawta
Ventures, LLC

        Defendants.

_____

Robert M. Moye and John J. Kaleba for Plaintiff.
Matthew D. Forsgren and Julie H. Firestone for Defendants.

_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 31, 2008, on Plaintiff's Motion for Summary Judgment Against Sherwin P. Brown and Jamerica Financial, Inc. [#206]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Plaintiff's Motion be granted.

## I.  FINDINGS OF FACT

Defendant Jamerica Financial, Inc. ("Jamerica") is an investment adviser registered with the Securities and Exchange Commission ("SEC"). (Answer, Docket No. 22, at ¶8.) Defendant Sherwin P. Brown ("Brown") is the President and 50% owner of Jamerica, through which he provided or still provides investment advisory services and portfolio management to over 250 clients. (*Id*. at ¶¶ 5-6.) Jamerica produces revenue by charging fees for the assets it manages. (*Id*. at ¶¶ 5-6.) The fees are capped at a rate of 1.5%. (*Id*. at ¶ 10.)

In March 2004, Brown formed a private investment fund called Brawta Ventures, LLC ("Brawta"). (*Id.* at ¶ 11.) Brown managed Brawta and marketed Brawta to clients of Jamerica. (*Id.*) He sold membership units in Brawta for $10,000 per unit. (Pickhartz Decl., Ex. 1 at ¶4; Smith Decl., Ex. 2 at ¶5; Swanson Decl., Ex. 3 at ¶5.) During 2004 and 2005, Brown raised more than $1.62 million from 53 investors. (Answer at ¶12.)

Brown asked Jamerica clients to invest in Brawta during meetings with them. (Ex. 1 at ¶3; Ex. 2 at ¶3; Ex. 3 at ¶3.) Some investors were told that Brawta would invest in start-up companies and others were told that the Brawta would invest in publicly traded stocks. (Ex. 2 at ¶3; Ex. 1 at ¶3.) The Brawta investors were not provided with offering documents or written disclosure before investing in Brawta. (Ex. 1 at ¶5; Ex. 2 at ¶6; Ex. 3 at ¶6.) Brown made various representations regarding the management fees that would be charged to Brawta. Brown represented to some investors that there would be no fees charged for the management of Brawta, other than the 1.5% fee charged by Jamerica for assets under management. (Ex. 2 at ¶ 4.) One investor was told that a fee would only be charged if Brawta was profitable. (Ex. 3 at ¶4.) Another client believed that a percentage of the Brawta funds would be deducted as a management fee. (Reinert Dep., Ex. 11 at 103.) No investor of Brawta was ever informed that funds had been withdrawn to pay any fees or management expenses. (Ex. 1 at ¶7; Ex. 2 at ¶8; Ex. 3 at ¶8.)

From the inception of Brawta to January 2006, more than $1.65 million was deposited into the Brawta checking account. (Javorski SJ Decl. at ¶19.) Brown had sole authority over the Brawta checking account. (*Id.* at ¶8.) Approximately, $869,633 was transferred out of the Brawta checking account for non-investment purposes. (*Id.* at ¶16.) Most of the money was transferred from Brawta to either the Jamerica checking account or Brown's personal checking account; Brown had sole

control over both accounts. (*Id.* at ¶¶8, 10-13.)  The money was transferred from Brawta in various methods.  Some Brawta funds were used to purchase official US Bank checks. (*Id.* at ¶11.)  Some Brawta funds were withdrawn by writing checks directly to a bank and other funds were withdrawn through transactions at the customer counter of the bank.  Most of these funds were then deposited in either the Jamerica checking account or Brown's personal checking account. (*Id.* at ¶¶12-13.)  However, it could not be determined where all the funds had been transferred; approximately $110,177 in Brawta funds were withdrawn through checks written directly to a bank and it is not known where those funds were deposited or how they were used. (*Id.* at ¶14.)  All of the transfers occurred at a time when either Jamerica or Brown had very low balances in their accounts and no available credit. (*Id.* at ¶¶19-20.)

One specific transfer from Brawta funds resulted in a payment to Timothy Gullickson for a personal debt owed by Brown.  On July 9, 2005, Brown wrote a check from the Brawta checking account to Gullickson for $22,500.00. (Ex. 18.)  This check was repayment for a personal loan given by Gullickson to Brown in 2002. (Gullickson Dep., Ex. 17 at 13-14, 19-20.)  The words "contract services" were written on the memo line of the check. (Ex. 18.)  On March 2, 2006, after Plaintiff had initiated its investigation, Brown called Gullickson to tell him that the $22,500.00 had been drawn from client funds. (Ex. 17 at 25.)  Brown asked Gullickson if he would represent that the payment of $22,500.00 was for providing assistance in picking stocks for the mutual funds. (*Id.* at 28-30.)  Gullickson refused Brown's request and promptly reported this conversation to his employer. (*Id.* at 30-31.)  Gullickson's employer informed the National Association of Securities Dealers ("NASD") of the conversation with Brown. (*Id.*)

In late February 2006, Plaintiff's examination staff conducted an inspection of Jamerica.

(Karlin TRO Decl., Docket No. 4 at ¶3.)  Brown was unable to produce any financial statements or ledgers for Brawta.  (*Id*. at ¶9)  Brown was unable to provide a complete list of investments that Brawta money had been invested.  (*Id*. at 17.)  Brown was also unable to provide complete banking records for the Brawta checking account.  (*Id*. at 9.)  Brown represented that no management fees had been charged to Brawta and all fees for managing Brawta were in the form of management fees charged by Jamerica.  (*Id*. at 6.)

During the inspection, the Plaintiff's inspectors found Jamerica's records to be incomplete and only current through December 31, 2004.  (*Id*. at ¶¶5, 9.)  Brown did produce general ledgers for Jamerica.  (*Id*. at ¶19.)  The general ledgers for Jamerica contained numerous capital contributions from Brown. (Javorski TRO Decl., Docket No. 4 at ¶¶51-52.) However, Brawta funds were the source of these capital contributions, not Brown, and the ledgers concealed this fact.  (*Id*.)

On April 28, 2006, in response to a Court Order [#99] the Defendant filed an accounting of the financial transactions of Brawta by Craig S. Siiro, CPA.  (Siiro Decl., Docket No. 20 at 6.)  Siiro reported $666,883 in transfers from the accounts of Brawta to either Brown or Jamerica.  (*Id*. at 9.)  Siiro also reported $210,353 in money that had been transferred out of Brawta with a destination that could not be determined.  (*Id*.)  Siiro determined that $865,389.76 of Brawta funds had been used for investment purposes.  (*Id*.)

On April 30, 2007, Brown's counsel was advised by the United States Attorney's Office that Brown was the target of a federal grand jury investigation.  On the following day, Brown brought a motion for a stay of these proceedings and sought a protective order preventing the depositions of the Defendants.  (*See* Docket No. 117.)  On July 16, 2007, Magistrate Judge Janie S. Mayeron denied the Defendants' motion.  (*See* Docket No. 167.)  On July 25, 2007, Brown appeared for his

4

deposition and asserted his Fifth Amendment privilege.  (*See* Brown Dep., Ex. 21.)  Brown also refused to testify on behalf of Jamerica or Brawta.  (*Id*. at 151.)  Brown also refused to produce a witness to testify on behalf of Jamerica or Brawta.  (*Id*.)

## II.    STANDARD OF REVIEW

According to Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In order to determine whether a certain fact is material, " it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986).   Summary judgment will not be granted "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  "The inquiry performed is the threshold inquiry of determining whether . . . there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id*. at 250.

When determining whether to grant a motion for summary judgment, a court must view all of the facts in the light most favorable to the non-moving party and give the non-moving party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  When the moving party brings forth a proper summary judgment motion, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R.

Civ.P. 56(e); *see Anderson*, 477 U.S. at 256 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c).")

## III.    LEGAL ANALYSIS

### A.    No Genuine Issue As To Any Material Fact Exists.

Plaintiff has presented this motion for summary judgment with the various types of evidentiary support contemplated under Rule 56(c).   In rebuttal to the evidence presented by the Plaintiff, Defendants have only presented  answers to interrogatories signed by Brown.  Plaintiff asks this Court not to consider any testimonial evidence presented by Brown, including the answers to interrogatories.  Plaintiff argues that it would be fundamentally unfair for Brown to refuse to provide deposition testimony, but then produce self-serving testimonial writings in response to this motion.  Brown argues that it is fundamentally unfair that he be required to defend himself in this action when he has asserted his Fifth Amendment privilege.

Brown ought not be permitted to assert his Fifth Amendment privilege during a deposition, but then present testimonial evidence, in the way of sworn discovery responses, that cannot be explored during a deposition by the Plaintiff.  *See SEC v. Merrill Scott & Assoc., Ltd.*, 505 F.Supp.2d 1193, 1208-12 (D. Utah 2007).  In considering whether to permit the Defendants to rely on their sworn discovery responses, "the court must 'carefully balance the interest of the party claiming protection against self-incrimination and the adversary's entitlement to equitable treatment. Because the privilege is constitutionally based, the detriment to the party asserting it should be no

6

more than is necessary to prevent unfair and unnecessary prejudice to the other side.'" *Id*. at 1209 (citing *SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 192 (3d Cir. 1994)).  Here, Defendants are only prohibited from presenting testimonial evidence from Brown, such as the answer to interrogatories signed by Brown.  Defendants are prohibited from relying on evidence of a testimonial nature from Brown because the Plaintiff was prevented from exploring these testimonial responses when Brown asserted his Fifth Amendment privilege.  Prior to this motion, the Court denied the Defendants motion to stay proceedings and stated that Brown does not have an "absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." (Docket No. 216.)  The Defendants had sufficient notice that they would have to continue to defend this civil matter and knew that Brown's assertion of his Fifth Amendment privilege would prejudice the Plaintiff.  It is fundamentally unfair for Defendants to create an issue of fact based upon sworn discovery responses made before he invoked his privilege.

Defendants have not brought forth any evidence to rebut the evidence presented by Plaintiff. In their memorandum, Defendants attempt to create a genuine issue of material fact only through citation to Answers to Plaintiff's First Set of Interrogatories.  Defendants did not present evidence of a non-testimonial nature or attempt to cast the evidence presented by Plaintiff in a different light. This Court does not consider the answers to interrogatories to be sufficient to create a genuine issue of material fact.  Since there is no genuine issue of material fact, it is appropriate to consider whether Plaintiff is entitled to judgment as a matter of law based upon the facts as set forth above and in its memorandum.

**B.      Plaintiff is Entitled to Summary Judgment on Its Claims**.

**1.      Violations of Section 17(a) of the Securities Act of 1933,  Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934.**

In the first three counts of the Complaint, Plaintiff alleges violations of Section 17(a) of the

Securities Act of 1933 ("Section 17(a)"), Section 10(b) of the Securities Exchange Act of 1934

("Section 10(b)"), and Exchange Act Rule 10b-5 ("Rule 10b-5").  Section 17(a) states:

> (a) Use of interstate commerce for purpose of fraud or deceit
>
> It shall be unlawful for any person in the offer or sale of any securities  . . .  by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly
>
> (1)      to employ any device, scheme, or artifice to defraud, or
> (2)      to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
> (3)      to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

15 U.S.C. §77q.  Section 10(b) states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange–
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered,  . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. 78j.  Under Section 10(b), Plaintiff has promulgated Rule 10b-5, which states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a)      To employ any device, scheme, artifice to defraud,
>
> (b)      To make any untrue statement of a material fact or to omit to state a

8

material fact necessary in order to make the statements made, in the light
of the circumstances under which they were made, not misleading, or

(c)     To engage in any act, practice, or course of business which operates or
would operate as a fraud or deceit upon any person, in connection with the
purchase or sale of any security.

17 CFR §240.10b-5.  Scienter is an element of violations under Section 10(b), Rule 10b-5, and

Section 17(a)(1) while it is not a required element under Sections 17(a)(2) and 17(a)(3).  *Aaron v.*

*SEC*, 446 U.S. 680, 701-02 (1980).  "Scienter means the intent to deceive, manipulate, or defraud."

*In re Navarre Corp. Securities Litigation*, 299 F.3d 735, 741 (8th Cir. 2002).  Scienter can be proven

by a showing of "severe recklessness."  *In re K-Tel Int'l, Inc. Securities Litigation*, 300 F.3d 881,

893 (8th Cir. 2002).

The evidence before the Court demonstrates Defendants acted with at least severe

recklessness in violating Section 10(b), Rule 10b-5, and Section 17(a).  Plaintiff has presented

unrefuted evidence that Brown received over $1.65 million to be invested in Brawta.  Then, Brown

transferred $869,633 from Brawta to either himself or Jamerica.  While Brown did not articulate a

consistent investment strategy for Brawta, the evidence does show that Brown indicated that the

money would be put to an investment purpose.  The money transferred to Brown and Jamerica was

not put to any investment purpose.  There is no documentation to support any investment purpose

for the transfer of funds from Brawta to Brown and Jamerica.  Furthermore, the evidence shows that

Brown made attempts to conceal the transfers from Brawta by converting the funds into cash by

writing checks directly to banks, by asking Gullickson to lie regarding the nature of the payment he

received, and by documenting contributions from Brawta to Jamerica as capital contributions from

Brown.  The evidence shows that Defendants acted in a manner designed to defraud and deceive its

clients.

In their memorandum, Defendants argue that a determination of scienter is inappropriate for summary judgment and list a series of legitimate purposes that these transfers represent, such as payments for patents Brown transferred to Brawta and payment of management fees and expenses. However, Defendants have provided no supporting documentation to refute the overwhelming evidence that Defendants acted with the requisite scienter. Defendants also fail to present any evidence demonstrating these transfers occurred for the claimed purpose or that these transfers represented the value of the patents or the amount of expenses and management fees incurred.

## 2.     Violation of Sections 206(1) and(2) and Rule 204-2(a)(2) and (6) of the Advisors Act.

In Count IV of the Complaint, Plaintiff alleges that Brown and Jamerica violated Sections 206(1) and 206(2) of the Advisors Act. Section 206 states:

> It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--
> (1) to employ any device, scheme, or artifice to defraud any client or prospective client;
> (2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client;
> . . .

15 U.S.C. §80b-6. In Count V of the Complaint, Plaintiff alleges that Jamerica violated Rule 204-2 under the Advisors Act. In Count VI of the Complaint, Plaintiff alleges that Brown aided and abetted Jamerica in violating Rule 204-2. Plaintiff claims that summary judgment is appropriate under subsections (a)(2) and (6) of Rule 204-2. These subsections require investment advisors to "keep true, accurate, and current the following documents: . . .(2) General and auxiliary ledgers (or other comparable records) reflecting asset, liability, reserve, capital, income and expense accounts.

10

. . . (6) All trial balances, financial statements, and internal audit working papers relating to the business of such investment adviser." 17 C.F.R. § 275.204-2.  An investment advisor is defined as under the Advisors Act as

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities . . .

15 U.S.C. § 80b-2(a)(11).

The evidence before the Court demonstrates Defendants violated of Sections 206(1) and(2) of the Advisors Act.  It is clear, and Defendants do not argue otherwise, that Defendants are investment advisors under the Advisors Act.  (Answer at ¶8.)  The evidence that establishes violations under Section 10(b), Rule 10b-5, and Section 17(a) supports a finding of a violation under Section 206(1) and (2).  Defendants misappropriated client funds and attempted to conceal this misappropriate from their clients.

The evidence before the Court demonstrates Defendants violated of Rule 204-2(a)(2) and (6) of the Advisors Act. When the Plaintiff's examination staff conducted an inspection of Jamerica, Brown was not able to produce current and complete records for Jamerica.  Brown was also unable to produce any financial statments or ledgers for Brawta.  Since Brown is solely responsible for the management and control of Jamerica, it has been shown that he aided and abetted Jamerica in violating the record keeping provisions of the Advisors Act.  It is worthy of note that, even in opposition to this motion, Defendants have not provided complete records.  The evidence clearly shows that Jamerica did not maintain the records required by the Advisors Act and Brown is

responsible for Jamerica's failure to keep appropriate records.

**C.   Plaintiff Is Entitled to the Relief It Seeks Including a Permanent Injunction, Disgorgement with Prejudgement Interest, and Consideration of Civil Penalties.**

**1.   Permanent Injunction**

Plaintiff seeks a permanent injunction preventing Defendants from future violations of Section 17(a), Section 10(b), Rule 10b-5, Section 206 (1) and (2), and Rule 204.  In determining whether a permanent injunction is appropriate, the Court must assess whether there is  " *a reasonable likelihood* of further violation in the future. " *SEC v. Comserv Corp.*, 908 F.2d 1407, 1412 (8th Cir. 1990) (citations omitted).  The evidence before the Court demonstrates that future violations are reasonably likely and a permanent injunction is appropriate.

Here, Plaintiff has shown numerous instances of misappropriation of funds by the Defendants.  The misappropriations occurred over a period of time and through a series of transactions.  When faced with an investigation by the Plaintiff, Brown attempted to conceal the misappropriation by asking Gullickson to lie to the Plaintiff.  Brown is also still actively working as an investment advisor and has been found in contempt of court for violating the preliminary injunction in this case.  (*See* Docket Nos. 291, 321.)  The foregoing demonstrates that it is reasonably likely that the Defendants will engage in further violations in the future and a permanent injunction is necessary.

**2.      Disgorgement with Prejudgment Interest**

Plaintiff requests that Defendants be disgorged of $869,633 with prejudgment interest, which represents the misappropriated investor funds.   It is within the equitable powers of this Court to order the Defendants to be disgorged of the misappropriated funds with prejudgment interest. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1104 (2d Cir. 1972.).   Disgorgement with prejudgment interest is appropriate to discourage future violations of the securities laws and to make the investors whole.   Disgorgement in the amount of $869,633 with prejudgment interest is appropriate as the Plaintiff has shown that this amount is a reasonable approximation of the misappropriated Brawta funds. *See SEC v. Kenton Capital, Ltd.*, 69 F.Supp.2d 1, 15 (D.D.C. 1998) (citing *SEC v. First City Financial Corp., Ltd.*, 890 F.2d 1215, 1232 (D.C.Cir.1989)).

**3.      Civil Penalties**

The imposition of civil penalties is contemplated in all three statutory regimes that Defendants have violated.   Plaintiff asks the Court to either impose a civil penalty or allow for additional briefing as to the appropriate civil penalty.   The undersigned recommends that the parties be allowed to submit additional briefing regarding the issue of the appropriate amount of civil penalties.

**IV.      RECOMMENDATION**

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Summary Judgment Against Sherwin P. Brown and Jamerica Financial, Inc. [#206] be **GRANTED**.

13

DATED: June 12, 2008                         s/ *Franklin L. Noel*

                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 1, 2008**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.


Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 1, 2008,** a complete transcript of the hearing.


This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.