UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States Securities and Exchange Commission, | Civil No. 06-1213(JRT/FLN) |
| Plaintiff, | |
| v. | **AMENDED REPORT AND RECOMMENDATION** |
| Sherwin P. Brown, Jamerica Financial, Inc. and Brawta Ventures, LLC, | |
| Defendants. | |

Robert M. Moye for Plaintiff.
Matthew D. Forsgren for Defendants.

**THIS MATTER** came before the undersigned United States Magistrate Judge on January 15, 2009, on a hearing to determine whether civil penalties are appropriate in this case [#364]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends a $400,000 penalty be imposed on Jamerica and a $80,000 penalty on Sherwin Brown.

**BACKGROUND[1]**

On September 30, 2008, Judge Tunheim granted the Securities and Exchange Commission's ("SEC") Motion for Summary Judgment and ordered the parties to file additional briefs addressing whether a civil penalty is appropriate in this case. (See Dkt. 349.)

---

[1] For a recitation of the facts, refer to Judge Tunheim's September 30, 2008 Order Adopting this Court's Report and Recommendation [Dkt. 349].

1

## ANALYSIS

In granting the SEC's motion for summary judgment, the Court concluded that Sherwin Brown and Jamerica violated Section 17(a) of the Securities Act of 1933 ("the Securities Act"), Section 10(b)(5) of the Securities Exchange Act of 1934 ("the Exchange Act") and Rule 10-b5 thereunder and the Investment Advisers Act of 1940 ("the Advisers Act"). These Federal Securities laws provide for identical civil monetary penalties and are "intended to both punish the individual violator and to deter future violations of the securities laws." *SEC v. Marker*, 427 F.Supp.2d 583, 592 (M.D.N.C. 2006). Fines are delineated in three tiers. The first tier sets a range for simple violations of the statute; the second tier is the range for violations involving fraud; the third tier sets the range for violations involving fraud which "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); 15 U.S.C. 80b-9(e). For a corporation, the potential penalty allowed under the third tier ranges from a maximum of the gross amount of pencuniary gain to the defendant as a result of the violation or $600,000(whichever is greater) to a minimum of $300,001(anything less would be a second tier penalty). For an individual, the potential penalty allowed under the third tier ranges from a maximum of the gross amount of pencuniary gain to the defendant as a result of the violation or $120,000 down to $60,001. *Id.*; 17 C.F.R. § 201.1002 (at Table II) (reflecting adjustment in civil penalty amounts to account for inflation).

To determine whether a civil penalty is appropriate, courts look to a number of factors, including: "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurring; and (5)

whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Securities and Exchange Commission v. Opulentica*, 479 F.Supp.2d 319, 331 (S.D.N.Y. 2007). Courts have also considered whether the defendant has cooperated with authorities. *SEC v. Church Extension of the Church of God, Inc.*, 429 F.Supp.2d 1045, 1050 (S.D. Ind. 2005); *SEC v. Sargent*, 329 F.3d 34, 42 (1st Cir. 2003). "While these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a 'discretionary nature' and each case 'has its own particular facts and circumstances which determine the appropriate penalty to be imposed.'" *Opulentica*. 479 F.Supp.2d at 331 (quoting *SEC v. Moran*, 944 F.Supp. 286, 296-97).

In determining the amount of penalties, the court may consider whether the defendant faces other criminal or civil sanctions and his or her financial condition. *Church Extension of the Church of God, Inc.*, 429 F.Supp.2d at 1051; *SEC v. Inorganic Recycling Corp.*, 2002 WL 1968341 at *4 (S.D.N.Y. Aug. 23, 2002).

Brown's violations of the securities laws support the imposition of a third-tier penalty. Brown received more than $1.62 million from investors for the purpose of investing in Brawta. (September 30, 2008 Order of Judge Tunheim [Dkt. 349] (hereinafter "Tunheim Ord.") at 14.) Instead of investing all of the funds, an audit by the SEC showed that $496,550 of these funds were transferred to Jamerica; $262,906 were transferred to Brown or used to pay his personal debts; and $110,177 were withdrawn by checks payable to U.S. Bank and the SEC was unable to determine how exactly the money was spent. (*Id*.) The evidence showed that Brown attempted to conceal many of these transfers by (1) converting funds to cash by writing checks directly to banks; (2) asking Gullickson to lie about the purpose of the $22,500 he received from Brawta; and (3) falsely

characterizing contributions from Brawta to Jamerica as capital contributions from Brown. (*Id*.)

Brown's degree of scienter in this case was relatively high. In securities fraud cases, scienter can be proven with evidence of "conduct which rises to the level of severe recklessness." *In re K-tel Int'l, Inc. Sec. Litig*., 300 F.3d 881, 893 (8th Cir. 2002). The Court found that this was a rare case in which there was no genuine issue of material fact on the issue of scienter because there was "overwhelming evidence" of severe recklessness. (Tunheim Ord. at 13.) Defendants' argument that "there should be no finding of scienter" is misplaced as the Court has already concluded the Defendants acted with reckless disregard of the regulatory requirements. (Defendants' Mem. in Opp. at 2.)

Defendants' conduct caused substantial losses or the risk of substantial losses to the investors. The Court found that they misappropriated $877.236.16.

As to whether Defendants' conduct was isolated or recurring, it was recurring. Sherwin Brown repeatedly diverted funds in at least three different ways, by transferring money to the Jamerica account, to his personal account and by writing checks to banks. He also wrote a check to Tim Gullickson from the Brawta checking account.

Further, during the course of this lawsuit, Brown did not fully cooperate with authorities and, as a result, was held in contempt of court for violating the preliminary injunction and asset freeze issued by the Court. Defendants contend that no penalty should be imposed because they cooperated with authorities. As evidenced by the finding of contempt, however, Defendants' cooperation was not substantial enough to warrant no imposition of a penalty.

The SEC seeks a third tier penalty against Brown individually and against Jamerica. As noted above, third tier penalties are for violations involving fraud which "directly or indirectly

resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. § 77t(d); 15 U.S.C. § 78u(d)(3); 15 U.S.C. 80b-9(e).

Here, a third tier penalty is appropriate. The SEC has asked for a penalty of $120,000 against Sherwin Brown and a penalty of $500,000 against Jamerica even though there were multiple statutory violations and the theoretical maximum for each violation is "the gross amount of pecuniary gain to such defendant as a result of the violation." *Id*.

The Court agrees that only a single penalty in the third tier should be imposed on each Defendant. Although Defendants' conduct violated three separate statutes, it was essentially a single course of conduct that violated all three statutes. The range of penalties is the same for the violation of each of the three statutes.

Defendants contend that no penalty should be imposed due to their financial condition which would render them unable to pay any civil fine. They offer no evidence in support of this contention. The single exhibit submitted by the SEC with their brief indicates that Defendants received close to $100,000 in Jamerica customer account fees between August 1, 2008 and October 9, 2008. (*See* Dkt. 362-2.) In spite of receiving investor fees, Brown claims to be receiving public assistance. Regardless, the Defendants' supposed inability to pay the fine should not preclude the imposition of a penalty.

At the hearing on this issue, Defense counsel also alluded to various news accounts of securities fraud cases involving losses substantially greater than the losses Defendants here caused. The maximum third tier penalty, counsel argued, should be reserved for those more egregious cases.

In light of the financial condition of the Defendants, the amounts that can be traced to

Jamerica's bank account ($496,550) and to Brown's bank account ( $262,906), and the other considerations discussed above, the Court concludes that a single penalty in the mid-range of the third tier is appropriate for both Brown and Jamerica.

## RECOMMENDATION

Based upon all of the files, records and proceedings herein, it is hereby RECOMMENDED that Brown pay a penalty of $80,000 and Jamerica pay a penalty of $400,000.

DATED: February 23, 2009      s/*Franklin L. Noel*
                              FRANKLIN L. NOEL
                              United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 12, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **March 12, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.