## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Civil No. 06-1213 (JRT/FLN) |
| Plaintiff, | |
| v. | |
| SHERWIN P. BROWN, JAMERICA FINANCIAL, INC., and BRAWTA VENTURES, LLC, | |
| Defendants. | |
| and | **ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| NAUNI MANTY, | |
| Receiver, | |
| v. | |
| CITIMORTGAGE, INC. as successor by merger with ABN AMRO Mortgage Group, Inc., | |
| Relief Defendant. | |

Robert M. Moye and Charles K. Kerstetter, **UNITED STATES SECURITIES & EXCHANGE COMMISSION**, 175 West Jackson Boulevard, Suite 900, Chicago, IL 60604-2615, for plaintiff.

Julie H. Firestone and Matthew D. Forsgren, **BRIGGS & MORGAN, P.A.**, 80 South Eighth Street, Suite 2200, Minneapolis, MN 5402, for defendants.

Timothy J. Pramas, **FELHABER, LARSON, FENLON & VOGT, P.A.** 220 South Sixth Street, Suite 2200, Minneapolis, MN 55402-4504; and

Nauni J. Manty, **MANTY & ASSOCIATES, P.A.**, 510 First Avenue North, Suite 305, Minneapolis, MN 55403, for the Receiver.

Seth J. S. Leventhal, **FAFINSKI MARK & JOHNSON, P.A.** 775 Prairie Center Drive, Suite 400, Eden Prairie, MN 55344; and Eric D. Cook, **WILFORD & GESKE, P.A.**, 7650 Currell Boulevard, Suite 300, Woodbury, MN 55125, for Relief Defendant.

This case is before the Court on Relief Defendant CitiMortgage, Inc.'s ("CitiMortgage") objections to a Report and Recommendation issued by United States Magistrate Judge Franklin L. Noel on December 12, 2008. After a *de novo* review of the Magistrate Judge's Report and Recommendation, *see* 28 U.S.C. § 636(b)(1)(C); D. Minn. LR 72.2(b), the Court overrules CitiMortgage's objections and adopts the Report and Recommendation for the reasons discussed below.

## BACKGROUND

On March 29, 2006, the Securities and Exchange Commission ("SEC") filed a lawsuit against Sherwin P. Brown, Jamerica Financial, Inc. ("Jamerica"), and Brawta Ventures, LLC ("Brawta") (collectively, "defendants"), alleging that defendants had engaged in a fraudulent investment scheme. The same day, the Court issued a temporary restraining order, followed by a preliminary injunction prohibiting defendants from offering or selling securities and from engaging in fraudulent acts in violation of Section 17(a)(1) of the Securities Act of 1933. On July 6, 2006, the Court appointed Nauni

Manty as receiver over Brawta (the "Receiver") and authorized Manty to commence summary proceedings in the case and to add relief defendants.[1]

ABN AMRO Mortgage Group, Inc. ("ABN AMRO") entered into a promissory note and mortgage with Brown in his personal capacity for certain real estate located in St. Paul, Minnesota. CitiMortgage, which is a successor by merger to ABN AMRO, maintains a lien on or a contractual interest in that real estate. From November 2004 through January 2006, Brown transferred approximately $69,775.88 in funds from a Brawta bank account with U.S. Bank to CitiMortgage for payment of Brown's mortgage obligations. The Receiver traced the transfer of funds taken from the Brawta U.S. Bank account to accounts at "Affinity" and to Jamerica's bank account, which were later used to pay CitiMortgage. Brawta, however, did not owe CitiMortgage money for any business obligations. Thus, the Receiver determined that the funds came directly from Brawta investors and CitiMortgage was not entitled to retain them. The Receiver demanded return of the funds from CitiMortgage, which CitiMortgage refused.

---

[1] Section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77va, and Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, confer general powers of equity on the Court when the SEC brings an action under either Act. *SEC v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972); *SEC v. Tex. Gulf Sulphur Co.*, 446 F.2d 1301, 1307 (2d Cir. 1971). Among the equitable tools at the Court's disposal is the power to appoint a receiver prior to a final determination on the merits of a securities fraud action. *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). One of the purposes of such an appointment is to ensure that a receiver "maintain[s] in status quo the assets of the [defendants] . . . until such time as the defendants can comply with the law." *Los Angeles Trust Deed & Mortgage Exch. v. SEC*, 285 F.2d 162, 181 (9th Cir. 1960). A court's exercise of its equitable powers with respect to appointing a receiver "is particularly necessary in instances in which the corporate defendant, through its management, has defrauded members of the investing public." *SEC v. First Fin. Group of Tex.*, 645 F.2d 429, 438 (5th Cir. 1981).

In a July 6, 2006, Order, the Court authorized the Receiver "[t]o take such action as is necessary and appropriate to preserve and take control of, and to prevent the dissipation, concealment, or disposition of any assets of Brawta Ventures." (Order Granting Motion to Appoint Receiver, Docket No. 41, ¶ 3.) Pursuant to that authority, on May 7, 2008, the Receiver filed a Summary Proceedings Application ("SPA") against CitiMortgage, seeking disgorgement of, a money judgment against CitiMortgage for, and the imposition of a constructive trust on amounts equal to the Brawta investor funds received by CitiMortgage. CitiMortgage moved to dismiss the SPA pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and the Magistrate Judge recommended denying that motion. CitiMortgage filed objections to the Magistrate Judge's Report and Recommendation, arguing that the Receiver failed to adequately state claims for fraudulent transfer or unjust enrichment under Minnesota law.

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the claimant, the non-moving party. *See, e.g., Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir. 2001). To survive a motion to dismiss, however, a claimant must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007). That is, a claimant must state "a claim to relief that is plausible on its face." *Id.* at 1974.

The Federal Rules of Civil Procedure "govern an action in which . . . a receiver sues or is sued." Fed. R. Civ. P. 66. Thus, the Receiver's SPA is subject to the standards applicable to a motion to dismiss under Rule 12(b)(6) for failure to state a claim and to the heightened pleading requirements under Rule 9(b), as discussed below.

## II. FRAUDULENT TRANSFER

A party may state a claim for fraudulent transfer in one of two ways under the Minnesota Uniform Fraudulent Transfer Act ("MUFTA"), Minn. Stat. §§ 513.41 *et seq.* "A transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation" either "with actual intent to hinder, delay, or defraud any creditor of the debtor," or "without receiving a reasonably equivalent value in exchange for the transfer or obligation." Minn. Stat. § 513.44(a)(1)-(2). It is undisputed that claims under the MUFTA must comport with Rule 9(b)'s particularity requirements. *See Kranz v. Koenig*, 484 F. Supp. 2d. 997, 1001 (D. Minn. 2007); *see also Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 1003 (D. Minn. 2006) ("In cases brought in federal court, Rule 9(b) applies to both common law and statutory fraud claims made under Minnesota law where the gravamen of the complaint is fraud.").

CitiMortgage contends that the Receiver's fraudulent transfer claim should be dismissed because the Receiver has not pleaded the alleged fraud with particularity as required by the Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that

"[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Circumstances include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (internal quotation marks omitted). "Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Id.* (citation omitted).

The SPA alleges that "[f]rom November 2004 through January 2006, Brown transferred funds from the Brawta U.S. Bank Account to the Relief Defendant for payment of the Relief Defendant obligation."[2] (Summ. Proceedings Application, Docket No. 323, ¶ 6.) The Receiver further alleges that she "traced funds from the Brawta U.S. Bank Account being transferred either to Affinity directly or through Jamerica Financial, Inc.'s account. During the [applicable] time period, the Relief Defendant received approximately $69,775.88 of the Brawta investor funds." (*Id.*, ¶ 7.) The Receiver also alleges that the "$69,775.88 was for payments made on the personal obligations of Brown. Brawta did not owe Relief Defendant money for any obligations of Brawta." (*Id.*, ¶ 8.) Finally, the Receiver states that the payments "came directly from the Brawta investors, and the Relief Defendant was not entitled to receive the funds." (*Id.*, ¶ 9.)

---

[2] The Receiver attached an exhibit to the Summary Proceedings Application outlining the payments made to ABN AMRO/CitiMortgage during the relevant time period.

The Magistrate Judge concluded that the SPA properly stated a fraudulent transfer claim by alleging the "who, what, when, where, and how" of the claimed fraudulent transfer. (Report and Recommendation, Docket No. 363, at 4); *see also Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009); *Schaller Telephone Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002). CitiMortgage does not appear to disagree that the Receiver properly stated the "who" (Brown, Brawta, Jamerica, and the Relief Defendant), the "where" (the named bank accounts), and the "when" (November 2004 to January 2006) of the claimed fraud. CitiMortgage argues, however, that the "what" and "how" of the alleged fraud were not pleaded with particularity.

The Court disagrees with CitiMortgage. Even when held to the higher pleading standards under Rule 9(b), the Receiver has adequately pleaded the "what" and "how" of the alleged fraud. That is, the SPA alleges that CitiMortgage received Brawta investor funds as payment for Brown's personal obligations and that those payments originated from a Brawta bank account and were sent to CitiMortgage via other intermediary bank accounts. Although "Affinity" is not well-defined within the four corners of the SPA, the reference to Jamerica's bank account as a funding source in the same sentence as the reference to Affinity is more than sufficient to reasonably infer the "what" and "how" of the alleged fraud. *See Stufflebeam v. Harris,* 521 F.3d 884, 886 (8th Cir. 2008) (noting that in reviewing a grant of a Rule 12(b)(6) motion to dismiss, the court "grant[s] all reasonable inferences in favor of [the claimant], the nonmoving party." (third alteration in original)).

CitiMortgage also argues that "the Magistrate Judge appears to have faltered in that he points out that Brown's underlying [Ponzi scheme] fraud is specifically alleged rather than any fraud related to the specific transfer for which the Receiver attacks CitiMortgage." (Objections to Report and Recommendation, Docket No. 365, at 10.) Specifically, CitiMortgage argues that the Receiver did not plead evidence of "actual intent" and also contends that the appropriate inquiry is "whether Brown intended to hinder, delay or defraud Brawta Ventures LLC *by making his mortgage loan payments to his mortgage lender*." (*Id.* at 5 (emphasis original).) The consequence of such analysis, according to CitiMortgage, is that "any money spent by Brown at any time traceable back to the misappropriated funds, regardless of whether it was an arm's length exchange for any goods or services, would constitute a 'fraudulent conveyance.'" (*Id.* at 3.)

To establish a claim under Minnesota Statute § 513.44(a)(1), the Receiver must plead that Brown made a transfer with "actual intent" to hinder, delay, or defraud the Brawta investors. The Minnesota statute lists factors or "badges of fraud" to consider when assessing whether there was actual intent, including whether "the debtor removed or concealed assets." Minn. Stat. § 513.44(b)(7). Here, the Receiver alleged "actual intent" by pleading that Brown removed or concealed assets through the payment of his mortgage obligations with Brawta LLC's investor funds. Specifically, the Receiver alleges: "From November 2004 through January 2006, Brown transferred funds from the Brawta U.S. Bank Account to [CitiMortgage]." (Summ. Proceedings Application, Docket No. 220, ¶ 6.) The Receiver further alleged that those funds were removed from

the Brawta bank account and transferred to CitiMortgage in satisfaction of Brown's **personal** obligations to CitiMortgage.  (*Id.*, ¶¶ 7-9.)

CitiMortgage maintains, however, that the Receiver failed to plead evidence of actual intent because the activity alleged is an "arm's-length," "straight-forward mortgage loan transaction."  However, CitiMortgage does not explain its assumption that using funds from Brawta investors to satisfy Brown's personal obligations in a "straight-forward mortgage loan transaction" cannot constitute an attempt to "remove or conceal" Brawta's assets.  That is, CitiMortgage does not cite to a statute or case law holding that when a receiver seeks to avoid a transfer of assets, the specific transfer must be unlawful in the abstract.[3]  Rather, the threshold consideration under the Minnesota Statute is whether that transfer was made with "actual intent to hinder, delay, or defraud **any** creditor of the debtor."  Minn. Stat. § 513.44(a)(1) (emphasis added).  Here, the creditors at issue are the Brawta investors.

And while the Court agrees that merely alleging that Brown made payments to his mortgage lender is insufficient to state a claim, the Receiver alleges that Brown made the

---

[3] Although case law regarding similar proceedings initiated by a receiver is relatively sparse, at least with respect to receivers appointed as a function of the Court's equitable powers in an SEC action, a useful, although imperfect analog may be found in federal bankruptcy statutes and, in particular, 11 U.S.C. § 548.  In a statute that reads similarly to the relevant MUFTA statute, § 548 states that a "trustee may avoid any transfer . . . of an interest of the debtor in property . . . if the debtor voluntarily or involuntarily . . . made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted."  11 U.S.C. § 548(a)(1)(A).  Notably, the focus in the bankruptcy statute is on the underlying fraud, and not the legality of the transfer in the abstract.  Indeed, federal bankruptcy courts have held that trustees may avoid fraudulent transfers even if the assets are legally transferred to non-culpable entities.  *See, e.g.*, *In re Tessier*, 190 B.R. 396, 404 (Bankr. D. Mont. 1995) ("[T]he Chapter 7 Trustee may attack religious giving by bringing a fraudulent transfer action against the religious institution that received the contributions pursuant to 11 U.S.C. § 548(a).").

mortgage payments by removing Brawta investors' funds in furtherance of a fraud on those investors. Under those circumstances, the Court finds that the Receiver properly pleaded that Brown's payments on his mortgage were made with actual intent to defraud Brawta investors.

Having concluded that the Receiver stated a claim for fraudulent transfer under subsection (a)(1) of Minnesota Statute § 513.44, the Magistrate Judge declined to review whether the Receiver properly stated a claim for fraudulent transfer under subsection (a)(2) of the statute. *See* Minn. Stat. § 513.44(a)(2) ("A transfer made . . . by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . without receiving a reasonably equivalent value in exchange for the transfer or obligation."). Because this Court finds that the Receiver properly stated a claim for fraudulent transfer under subsection (a)(1), it also declines to address whether the Receiver stated a claim from fraudulent transfer under subsection (a)(2).

Accordingly, the Court agrees with the Magistrate Judge's recommendation and denies CitiMortgage's motion to dismiss the Receiver's fraudulent transfer claim.

### III.  UNJUST ENRICHMENT

CitiMortgage also asserts that it is entitled to dismissal of the Receiver's unjust enrichment claim because the Receiver has not pleaded that CitiMortgage or ABN AMRO engaged in illegal, unlawful, or immoral conduct in accepting or retaining the payments made by Brown in satisfaction of his personal mortgage obligations.

CitiMortgage also argues that the SPA fails to plead this claim with particularity as required under Rule 9(b).

"The theory of unjust enrichment or money had and received . . . has been invoked in support of claims based upon failure of consideration, fraud, mistake, and in other situations where is would be morally wrong for one party to enrich himself at the expense of another." *Cady v. Bush*, 166 N.W.2d 358, 361-62 (Minn. 1969). To recover for unjust enrichment, the Receiver must plead that CitiMortgage "knowingly received something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention." *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992).

The Magistrate Judge noted that that Minnesota Supreme Court has not addressed whether a claim for unjust enrichment must include an allegation that a defendant committed some wrong. After reviewing cases from the Minnesota Courts of Appeals and one case from the District of Minnesota, however, the Magistrate Judge held that "an unjust enrichment claim does not require a defendant to commit a wrong, but only requires that the defendant benefit from another's wrong." (Report and Recommendation, Docket No. 363, at 6.) CitiMortgage objects to that conclusion, arguing that such a rule is overbroad and erroneous in light of Minnesota case law. Instead, CitiMortgage argues that "[t]he overwhelming preponderance of Minnesota case law on unjust enrichment . . . has always required illegal, unlawful, or, at a minimum, immoral conduct as a prerequisite to liability for unjust enrichment." (Objections to Report and Recommendation, Docket No. 365, at 9.)

Whether the Receiver must allege some misconduct on the part of CitiMortgage or ABN AMRO is directly relevant to the question of whether, under the circumstances, it would be unjust to permit CitiMortgage to retain the almost $70,000 in mortgage payments. Because the Minnesota Supreme Court has yet to address this legal question, the parties present several cases supporting their respective positions. The Receiver contends that three cases, *Wells Electric, Inc. v. Schaper*, No. A06-420, 2006 WL 2807179 (Minn. Ct. App. Oct. 3, 2006), *Honeywell/Alliant Techsystems Federal Credit Union v. Buckhalton*, No. C2-99-1194, 2000 WL 53875 (Minn. Ct. App. Jan. 25, 2000), and *Kranz v. Koenig*, 484 F. Supp. 2d 997 (D. Minn. 2007), support her argument that she need not plead that CitiMortgage or ABN AMRO committed some wrong in order to recover under an unjust enrichment theory. CitiMortgage cites two cases, *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001), and *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.*, 493 N.W.2d 137, 140 (Minn. Ct. App. 1992), for the opposite proposition. The Magistrate Judge found the reasoning in the Receiver's cited case law persuasive and concluded that "the Receiver was not required to allege that CitiMortgage knowingly received stolen investor money." (Report and Recommendation, Docket No. 363, at 7.)

In *Buckhalton*, the Minnesota Court of Appeals stated:

> Although Colbert obtained the money illegally, there is neither evidence nor assertion that appellants participated in the fraud or had any knowledge of how Colbert obtained the money. The stipulated facts do not show that appellants engaged in any unlawful or illegal conduct, inducing Honeywell to pay over the money. However, **we conclude that despite the absence of proof of fraud or illegal conduct on the part of appellants, because of equity, they are not entitled to the money**. The money came to them as a

> direct result of the fraudulent nature by which it was obtained and transferred.

*Buckhalton*, 2000 WL 53875 at *3 (emphasis added); *see also Wells Elec.*, 2006 WL 2807179, at *6-7.

A court in this district found the *Buckhalton* and *Wells Electric* courts' reasoning persuasive, holding: "Although the Amended Complaint does not allege that [the defendant] participated in the fraudulent scheme, it alleges that he received the proceeds from a sale based on fraud. These allegations sufficiently set forth a circumstance where it would be inequitable for [the defendant] to retain the proceeds." *Koenig*, 484 F. Supp. 2d at 1001. CitiMortgage attempts to distinguish *Buckhalton* and *Koenig* on the basis that those cases dealt with transactions in which no consideration was paid for the transfer of assets whereas here, the payments to CitiMortgage were made on a valid mortgage obligation. The Court is unpersuaded by this or other distinctions proposed by CitiMortgage.

Indeed, the fundamental question here is whether it would be unjust to permit CitiMortgage to retain the almost $70,000 in payments it received in consideration for a legal mortgage transaction, notwithstanding the allegation that those funds were the product of a fraud on Brawta investors. In light of *Koenig* and the Court's agreement with the reasoning stated in the cases cited by the Receiver, the Court agrees with the Magistrate Judge that the Receiver has at least alleged a claim for unjust enrichment that is plausible on its face.

CitiMortgage also argues that because the unjust enrichment claim sounds in fraud, it is subject to Rule 9(b)'s heightened pleading requirements and CitiMortgage claims that the SPA fails to satisfy those requirements. *See Russo*, 462 F. Supp. 2d at 1003 (holding that Rule 9(b) pleading requirements apply to state common law claims in federal court "where the gravamen of the complaint is fraud."). As noted in the discussion of the fraudulent transfer claim above, however, the Receiver has properly alleged the who, what, when, where, and how of the alleged fraud, and those allegations are sufficient to place CitiMortgage on notice of the Receiver's fraud theory.

Accordingly, CitiMortgage's motion to dismiss the unjust enrichment claim is denied.

## ORDER

Based on the foregoing records, files, and proceedings herein, the Court **OVERRULES** Relief Defendant CitiMortgage, Inc.'s objections [Docket No. 365] and **ADOPTS** the Report and Recommendation of the Magistrate Judge dated December 12, 2008 [Docket No. 363]. Therefore, **IT IS HEREBY ORDERED** that Relief Defendant CitiMortgage's Motion to Dismiss [Docket No. 343] is **DENIED**.

DATED: July 20, 2009  
Minneapolis, Minnesota.

\_\_\_\_s/ John R. Tunheim\_\_\_\_  
JOHN R. TUNHEIM  
United States District Judge